UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA      :

                                   22 CR 493 (JMA)

      -against-                  :

GORAN GOGIC                   :
-----------------------------------------------------------

# OPPOSITION TO
# GOVERNMENT'S MOTION TO DISQUALIFY DEFENSE COUNSEL
# AND CROSS-MOTION
# TO STRIKE GOVERNMENT'S *EX PARTE* FILING

Angela D. Lipsman
Joseph R. Corozzo
Rubinstein & Corozzo, LLP
*Attorneys for Defendant*
*Goran Gogic*
260 Madison Avenue, 22d Fl.
New York, New York 10016
(212) 545-8777 (ph)
(917) 722-8206 (fax)
jcorozzo@rubcorlaw.com
alipsman@rubcorlaw.com

TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................3

FACTS..................................................................................................................7

    I. The Alleged Violation of the Protective Order. .......................................7

    II. The Government's Attempt to Twist An Alleged Violation Into Part of a Conspiracy..........9

    III. Alleged Jury Tampering. ...............................................................12

DISCUSSION .......................................................................................................14

    I. There Is No Unwaivable Conflict In the Case At Bar. .............................14

    II. Cross-Motion to Strike the Government's *Ex Parte* Submission..........................19

CONCLUSION.....................................................................................................21

## PRELIMINARY STATEMENT

In their motion, the Government seeks the removal of counsel based upon an alleged violation of a Protective Order and their intimating that this firm retroactively conspired to intimidate witnesses. The Government then alleges that Joseph R. Corozzo ("Corozzo") is a subject of an investigation into jury tampering, citing NO evidence in support of any complicity.

With these baseless allegations, the Government seeks the removal of counsel and the consequent deprivation of Mr. Gogic's constitutionally guaranteed right to counsel of his choice.

On this scant record, the motion should be denied.

The Government relies heavily on cases in which counsel might be called as a witness during trial, or in which counsel at least had knowledge of facts that were at issue in trial.

These are all inapposite as the Government does not, and cannot argue that there is any reason for counsel to be witnesses at Mr. Gogic's trial in the case at bar on charges of violating the Maritime Drug Law Enforcement Act ("MDLEA") and conspiracy to violate same.

Instead, the Government posits the novel legal theory that counsel should be disqualified pretrial out of speculation that counsel *might* be a witness after the jury has reached a verdict in either a hypothetical *Fatico* hearing or in a separate trial. Again, such speculation cannot form the legal basis for the recusal of counsel.

Moreover, the reason for disqualifying counsel from cases in which they might be fact witnesses at trial falls apart at the *Fatico* stage. If the lines between advocate and fact witness are blurred at *trial*, then *jurors* might be inappropriately swayed by advocacy from a person who can claim first-hand knowledge of facts at issue.

3

We are, however, unaware of any cases holding that counsel with personal knowledge must be disqualified so as to avoid inappropriately swaying a *court* during a *Fatico* hearing. Certainly, the Government has not cited to any. Indeed, the Court needs no such protection.

But, assuming *arguendo:* (a) that there was any legitimate risk that Your Honor would be inappropriately swayed at a *Fatico* hearing by the undersigned and (b) that the issue were to come up post-trial in the first place, the Government's motion to disqualify on this ground is patently premature.

The proper time for bringing such a motion would be if and when a *Fatico* hearing is scheduled,[1] at which point, if Your Honor deems it necessary, the undersigned can be disqualified from representing Mr. Gogic at a *Fatico* hearing. That in no way translates to grounds for disqualification from representing Mr. Gogic *at trial*, where counsel is not alleged to have any knowledge whatsoever that would make us witnesses on the charges of violating the Maritime Drug Law Enforcement Act or conspiracy to violate same.

Similarly, speculation that counsel might be fact witnesses in a *separate* case, on *entirely different charges* if the Government obtains a separate Indictment against Mr. Gogic, does not make counsel fact witnesses *in the case at bar* and does not disqualify us from representing Mr. Gogic in the case at bar. In the unlikely event that the Government is able to obtain a separate Indictment against Mr. Gogic and justifiably posits that counsel are potential witnesses, a motion for disqualification can properly ensue. The Government's argument that defense counsel may

---

[1] As the office's sister United States Attorney's Office in the Southern District of New York pointed out in recent filings in *United States v. Franzone*, 21 CR 446 (VSB) (S.D.N.Y.), Doc. #s 197, 199, courts have not held that a defendant has an absolute right to a *Fatico* hearing anytime that there is a dispute over the applicability of Guidelines enhancements. While we are not convinced of the constitutionality or justification for denying a defendant a *Fatico* hearing when enhancements are in dispute, under current precedent it would be the *Court's* decision whether or not to hold a *Fatico* hearing.

4

have a conflict of interest because we might act out of a desire to curry favor with the Government is without any merit. We are advocates and have ferociously advocated for our client and will continue to do so. We know perfectly well that there is no love lost between us and the U.S. Attorney's Office and, given the Government's stated posture here, there is none to be cultivated.

Our vigorous defense in this case struck at the core of the Government's case. The Court may recall that after protracted motion practice by *this* law firm, on October 31, 2025, *less than three weeks* before trial was to begin, in a case of first impression, the Court precluded much of the "Sky Evidence" the Government obtained from France and, one week later, the Court successfully persuaded the Government not to offer the remainder of the "Sky Evidence" from France into evidence.

For three years, the Government built their trial strategy in this case around the Sky Evidence, and prosecutors in this and other districts across the United States brought many other criminal cases and obtained many convictions against other defendants based on files obtained from France purportedly representing communications exchanged on encrypted messaging app SkyECC. This Court's landmark decision undermines the ability of prosecutors throughout the United States to prosecute and convict individuals based on SkyECC.

Undoubtedly, when Your Honor precluded "Sky Evidence" in the case at bar on October 31, 2025, the Government was left scrambling to try to find a different trial strategy in the less than three weeks leading up to the trial. Knowing this, we were confident in our ability to win the trial fair and square without resort to the tactics implied by the Government.

We do consent to a *Curcio* hearing so that the Defendant, on the record, can be reminded of the alleged potential conflict of interest and can confirm for the Court that he knowingly and

voluntarily chooses to waive the alleged potential conflict and to continue to have the undersigned represent him.

In all other respects, the Court should deny the Government's motion to disqualify. Mr. Gogic has a Constitutional right under the Sixth Amendment to counsel of his own choosing at trial, and the Government has not satisfied their burden of proving that the counsel that he chose has an un-waivable conflict of interest, if any at all.

The Government indicates that it has filed an *ex parte* submission in further support of their motion concerning Mr. Corozzo being "a subject in the ongoing investigation into juror bribery and obstruction." Motion to Disqualify p. 1.

However, nowhere in the Motion to Disqualify does the Government raise any allegations that Mr. Corozzo or anyone else in the firm was involved in bribing a juror.

Neither Mr. Corozzo nor any of Mr. Gogic's other attorneys had any involvement in or knowledge of attempting to bribe a juror.

We move to strike the *ex parte* submission filed by the Government as Mr. Gogic has a right to rebut any allegations or arguments raised by the Government on their motion to disqualify, given that his Sixth Amendment right to counsel of his own choosing at trial is at stake, and that the outcome of that trial will determine whether he is to be deprived of his liberty for decades (if not for the rest of his life). We cannot rebut something that has been concealed from us. In the alternative, the Court should Order the *ex parte* submission disclosed to the defense so that the defense has the opportunity to rebut same.

**FACTS**

Mr. Gogic is charged with allegedly violating the MDLEA on or about February 27, 2019, March 18, 2019, and June 19, 2019, and with conspiring to violate same from in or about and between May 2018 and July 2019. Indictment, Doc. # 1.

Defense counsel does not have any personal knowledge underlying any of the aforesaid charges, nor has the Government alleged that we do. The Government would be hard-pressed to make any such allegation, as defense counsel did not know Mr. Gogic in 2019.

Mr. Gogic was indicted by a Grand Jury in this district and then arrested at an airport in Florida in October of 2022. A different attorney from a different office represented Mr. Gogic at his arraignment in Florida, but was not retained to represent him in this district.

Talkin, Muccigrosso & Roberts, LLP was initially retained on December 1, 2022. However, they neither took an active role in motion practice, nor were they ever retained, as our firm was, to represent Mr. Gogic at his trial.

Accordingly, while our firm was and is prepared to try this case, at present, Talkin, Muccigrosso & Roberts, LLP is not.

Our law firm was not retained until August of 2023. Notice of Appearance, Doc. # 23.

I. The Alleged Violation of the Protective Order.

On December 17, 2025, the Government represented to the Court that our firm had violated the Protective Order in this matter by providing Mr. Gogic with materials, found in his cell, that he was not permitted to have in his possession.[2] A copy of the materials in question

---

[2] To be clear, the Government does not allege that Mr. Gogic was prohibited from *seeing* any of these materials, only that he was prohibited from keeping them in his possession. Motion to Disqualify, p. 3.

purportedly seized from Mr. Gogic's cell was turned over on January 12, 2026 (three days after the Government's Motion had been filed). We attach them hereto as Exhibit A, filing them under seal given the Protective Order.[3]

They consist of a single photograph in which everyone's faces, with the exception of Mr. Gogic's face, was fully redacted by the Government, making everyone but Mr. Gogic unidentifiable from the photograph; and a machine translation of a cooperating witness's proffer notes. The Government states that the photograph "depict[ed] the defendant and other individuals, including the then 15-year-old daughter of a cooperating witness ("CW-1")," Motion to Disqualify p. 3. According to both Rule 16 and 3500 materials, Mr. Gogic and CW-1 ███

███████████████████████████████████████████

███████████████████████

No one at the law firm intentionally gave these materials to Mr. Gogic, let alone with the intent "to contact and intimidate witnesses."[4]

All we know is that associates of the firm regularly visited Mr. Gogic to review discovery with him. The discovery in the case at bar is highly voluminous, to say nothing of the Government's marked exhibits or of the 3500 material. At times, hard copies of many documents would be brought to these visits. As English is not Mr. Gogic's native language, these would sometimes include documents that we had had translated, either by a certified translator, or by using a computer to generate a machine translation of same, for Mr. Gogic to review during legal visits. (Though the reliability of machine translations is somewhat questionable.)

---

[3] It is ironic that the firm is accused of violating the Protective Order, given that for years we have been bending over backwards to avoid violating the Protective Order in any of our numerous filings.
[4] Motion to Disqualify p. 4.

While none of us intended to leave any protected materials with Mr. Gogic, we acknowledge that the materials were not kept in our sight at all times. For instance, we would not have taken voluminous materials with us into the bathroom or when visiting the vending machine. And, there being so many documents, it would have been difficult to discern if any were missing after the visit. Accordingly, we would not have known if a couple of documents brought to the MDC ended up inadvertently mixed in with whatever papers that Mr. Gogic was allowed to have, that he brought to meetings.

Even if the Court finds us in violation of the Protective Order, the appropriate sanction would NOT be disqualification.[5] The Government's leap to an alleged violation as part of a conspiracy "to contact and intimidate witnesses"[6] has absolutely no basis in fact.

## II. The Government's Attempt to Twist An Alleged Violation Into Part of a Conspiracy.

CW-2 was the subject of the translated proffer notes seized from Mr. Gogic's cell. As the Court can see from Exhibit A, someone, presumably Mr. Gogic, made handwritten notes on the document. We asked a translator to translate the handwritten notes for us.[7] As the Court can see from Exhibit B (filed under seal), the defendant commented on the proffer notes, "[CW-2] lied



," and "                                                                    

          ., he's lying."

---

[5] Paragraph 23 of the Protective Order provides, "This Court shall retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof." Protective Order, ECF # 28, ¶ 23.

[6] Gov's Motion to Disqualify p. 4.

[7] And also to translate the portions of the proffer notes that were marked off. For clarity, the translator had already signed the Protective Order.

The Government proffers that TWO YEARS AGO, in January 2024, the defendant FaceTimed CW-2 at the MDC on a contraband cell phone.[8]

The Government seems to be trying to argue that defense counsel *retroactively* participated in this alleged attempt to interfere with CW-2 by giving Mr. Gogic his proffer notes over a year after the fact. Possibly the Government is unclear on chronology, given that an alleged Protective Order violation in **2025** cannot have contributed to alleged misconduct in **2024.**

We would also like to clarify at this juncture something the Government said at the last status conference. On December 17, 2025, the Government insinuated that Mr. Gogic used a cell phone to distribute the protected materials found in his cell to persons unknown. Notably however, the Government's Motion to Disqualify does not allege that any cell phone was found in Mr. Gogic's cell during the search and seizure. Nor does it suggest any basis for the allegation that the protected material was disseminated outside the MDC. Such speculation cannot be the basis for disqualification absent proof of misconduct.

The Government's suggestion that it is our law firm and/or our client that has "caused CW-3 and CW-3's family significant fear for their safety"[9] is frivolous. The Government alleges that we may have leaked "CW-3"'s identity or likeness to a reporter.[10] This is false.

By the time that we were retained, the reporter for the Amsterdam-based newspaper referenced in the Government's Motion to Disqualify at p. 3, had *already* learned from independent sources that "CW-3" was one of the Government's witnesses. Ex. C – Email from

---

[8] Gov's Motion to Disqualify p. 3.
[9] Gov's Motion to Disqualify p. 4.
[10] Motion to Disqualify p. 3 – 4.

Wouter Laumans, in original and with translation from Yehudi Moszkowicz, filed under seal to protect CW-3.



Of course, the Government is perfectly aware that CW-3 ███████████████████████ ██████████████████████████████████████████████████████. We know the Government is aware of this fact because ████████████████████████ ██████████████████████████████████████████████████████████████ ███████████████.

It is, frankly, disingenuous of the Government to now try to claim that the undersigned is in any way responsible for ████████████████████████.

Likewise, it is disingenuous of the Government to accuse us of sharing a photograph of CW-1 with Mr. Gogic with the intent to threaten CW-1 or his family. Even if we assumed for the sake of argument that Mr. Gogic intended to somehow influence CW-1's testimony (which we have no knowledge of),[11] the redacted photograph in Exhibit A would have been entirely useless. CW-1 <u>cannot be identified</u> from the photograph in Exhibit A, as his entire face has been redacted by the Government, as have the faces of everyone in the photograph save Mr. Gogic's.

---

[11] Note that the Government has to hedge their own proffer. Instead of alleging that three individuals who allegedly attempted to reach out to CW-1 were known to be conspiring with Mr. Gogic, the Government can only allege that they were either "associated with the defendant **or** otherwise involved in narcotics trafficking." Motion to Disqualify p. 3 (emphasis added). That tells us *nothing* of whether Mr. Gogic had anything to do with any of these individuals. While this is one of the largest narcotics cases the U.S. Attorney's Office has ever had, that hardly makes Mr. Gogic a conspirator of everyone in the world involved in narcotics trafficking.

Meanwhile, as the Government knows, or should know, CW-1 ████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████

████████████████████████

Mr. Gogic was clearly familiar with CW-1 long before coming into possession of the

photograph in Exhibit A, as evidenced by the fact that the photograph was taken ████████

████████ in the first place years before Mr. Gogic's cell was searched. [12]

## III. Alleged Jury Tampering.

On November 17, 2025, the morning that trial was scheduled to commence, the

Government moved to dismiss the full venire, to adjourn the trial sine die and the matter for 30

days, and for an anonymous, partially sequestered jury.  The defense did not oppose the part of

the application to adjourn the trial, put the matter over for 30 days and to dismiss the venire

---

[12] As to the Government's argument that the stenciled image appearing in the Amsterdam paper resembles one of the Government's exhibits, the Court may recall that the Government is still intending to offer into evidence photographs from the Internet found in Mr. Gogic's browsing history as if they were photographs taken or saved by Mr. Gogic, which they were not. Presumably, then, the Government exhibit of CW-3 in question was also taken by the Government from the Internet or else is extremely similar to other photographs already available on the Internet. Though, frankly, we are still perplexed as to why the Government wants to offer any photographs of their witnesses as exhibits when their witnesses will be testifying before the jury at trial.

while the Government conducted an investigation, and that portion of the Government's application was granted on consent.

The Government stated, "The government has learned that a group of individuals attempted to tamper with a member of the jury. They approached the juror and offered to pay the juror $100,000 to return a verdict of not guilty in this trial. The FBI arrested three individuals this morning on jury tampering charges… The investigation revealed that the individuals who were involved in the plot may have obtained a copy of the jury list and/or information from individuals connected to this trial… Given the nature of the charges and the individuals involved, the government believes that the jury needs protection." (A literal interpretation of "individuals connected to this trial," would include members of the U.S. Attorney's Office, members of the federal investigating agencies, and court personnel.)

Although they are two entirely separate matters, the Government appears to be conflating an alleged violation of the Protective Order with the alleged jury tampering. That is, the Government appears to be arguing that if we violated the Protective Order, then defense counsel must have somehow been involved in attempting to bribe a juror, without making any actual allegations of fact that any of Mr. Gogic's attorneys were involved in attempting to bribe a juror (unless they have made such allegations in an *ex parte* filing). The record seems clear that there is no connection between the two alleged events.

Other than to simply state that this unfounded speculation is untrue, given the utter absence of any alleged factual predicate, the Government's presentation is woefully inadequate to justify the deprivation of counsel to Mr. Gogic. Defense counsel was working seven days a week in the weeks leading up to the trial date to prepare for trial. Defense counsel was, and still is, confident that we have a strong, triable case, particularly as it is the *Government*, not defense

13

counsel, who was left scrambling in the wake of Your Honor's landmark decision of October 31, 2025, and who unsuccessfully asked Your Honor to reconsider the ruling at the following status conference.

## DISCUSSION

I. There Is No Unwaivable Conflict In the Case At Bar.

The Sixth Amendment of the U.S. Constitution covers "both the right to counsel of one's own choosing… and the right to an attorney unimpaired by conflicts of interest… If a conflict is waivable, a *Curcio* hearing is conducted to determine whether defendant's waiver is knowing and intelligent." *United States v. Pizzonia,* 415 F. Supp. 2d 168, 175 – 176 (E.D.N.Y. 2006) (citing *Wheat v. United States*, 486 U.S. 153 [1988]; *United States v. Perez*, 325 F.3d 115, 125, 127 [2d Cir. 2003]; *United States v. Levy*, 25 F.3d 146, 153 [2d Cir. 1994]; Restatement [Third] of the Law Governing Lawyers § 122[1] [2000]).

"'Because courts must guard against the tactical use of motions to disqualify counsel, they are subject to fairly strict scrutiny.'" *United States v. Schulte*, 2020 U.S. Dist. LEXIS 19486, *13 (S.D.N.Y. Feb. 3, 2020) (citing *Murray v. Metro. Life Ins. Co.,* 583 F.3d 173, 178 [2d Cir. 2009]).

The burden of proving that defense counsel should be disqualified rests with the Government, and is a "heavy burden." *Schulte,* 2020 U.S. Dist. LEXIS 19486, *13 (citing *Murray,* 583 F.3d at 178); *Reyes v. Golden Krust Caribbean Bakery, Inc.*, 15 CV 7127 (DF), 2016 U.S. Dist. LEXIS 121623, *24 (S.D.N.Y. Sept. 1, 2016) (quoting *Simply Fit of N. Am., Inc. v. Poyner,* 579 F. Supp. 2d 371, 384 [E.D.N.Y. 2008]; other citation omitted).

The Government has not met that burden here, where the Government has failed to allege any facts warranting the drastic action of depriving Mr. Gogic of his Sixth Amendment right to counsel of his own choosing.

The alleged potential conflict of interest is waivable, and we consent to a *Curcio* hearing so that Mr. Gogic can aver on the record that he is knowingly and intelligently choosing to waive it. "To ensure that a defendant's waiver is made knowingly and intelligently at the *Curcio* hearing, the district court should: '(i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.'" United States v. Arrington, 941 F.3d 24, 40 (2d Cir. 2019) (quoting *United States v. Iorizzo*, 786 F.2d 52, 59 [2d Cir. 1986]).

The Government argues that the alleged potential conflict of interest is not waivable on the ground that Mr. Corozzo is the "subject" of a criminal investigation. This alone cannot, by any measure, justify recusal.

If being the subject of a criminal investigation barred Mr. Corozzo from representing defendants, his decades-long legal career would have been stunted in its infancy as the FBI's fruitless attempts to find evidence of him engaging in racketeering date all the way back to the 1990s, when Rubinstein & Corozzo was only a few years old.

In the opinion denying the Government's motion to disqualify Mr. Corozzo over said investigation in *Pizzonia*, the Hon. Jack B. Weinstein found that Mr. Corozzo "is an able attorney with considerable experience defending persons accused of participating in organized crime… He denies any link to crime warranting disqualification… There is no reason that any

15

testimony about defense counsel's alleged criminal associations would be relevant at defendant's trial… [Mr. Corozzo] denies any misconduct and contends that the investigations, one of which has been pending since 1996, are wholly manufactured." *United States v. Pizzonia,* 415 F. Supp.2d 168, 175, 183 - 184 (E.D.N.Y. 2006).

A conflict is waivable absent "a strong connection between the activity for which counsel is investigated and defendant's charges," *Pizzonia*, 415 F. Supp. 2d 168, 183 – 184 (citations omitted).

In arguing that Mr. Corozzo has an unwaivable conflict of interest in the case at bar, the Government relies upon *United States v. Napoli*, 2010 U.S. Dist. LEXIS 41219; 2010 WL 1687669 (E.D.N.Y. April 27, 2010), in which Judge Gleeson held that Mr. Corozzo had an unwaivable conflict of interest. Government's Motion to Disqualify, p. 9.

In *Napoli*, Judge Gleeson, acknowledging "that denying Napoli of trial counsel of his choice is… a significant deprivation,"[13] precluded Mr. Corozzo and Rubinstein & Corozzo from representing Napoli only at trial, while permitting Mr. Corozzo to continue to represent Mr. Napoli during the rest of the proceedings in the matter in order to diminish "any hardship to Napoli." 2010 U.S. Dist. LEXIS 41219, *11. Judge Gleeson disqualified counsel from representing Mr. Napoli ***at the trial*** where Mr. Corozzo was a "key witness" or unsworn witness ***at the trial***[14] and was "a subject of the government's investigation into" the charges against the defendant in that case. 2010 U.S. Dist. LEXIS 41219, *5. Ultimately, the matter did not go to trial, and Mr. Corozzo continued to zealously represent Mr. Napoli through sentencing without incident.

---

[13] 2010 U.S. Dist. LEXIS 41219, *12.
[14] 2010 U.S. Dist. LEXIS 41219, *11 – 12.

*Napoli*, however, is easily distinguishable from the case at bar. In *Napoli,* the defendant was charged in that indictment with attempting to persuade a witness not to cooperate in law enforcement's investigation of Napoli, and Mr. Corozzo was alleged to have attended and participated in a meeting between the defendant and that witness, making him an eyewitness to a meeting *underlying* the charges in *Napoli* and the subject of an investigation as to whether Mr. Corozzo was involved in attempting to interfere with that witness's cooperation.

Unlike in *Napoli,* here, the alleged potential conflict of interest is waivable, as the defendant's charges in the case at bar are unrelated to the investigation of allegedly attempting to bribe a juror or otherwise attempting to obstruct justice. . The defendant's charges in the case at bar consist solely of violations of the Maritime Drug Law Enforcement Act ("MDLEA") and conspiracy to violate same in 2018 – 2019. None of Mr. Gogic's attorneys are being investigated for violating or conspiring to violate the MDLEA at all, let alone in 2018 - 2019. None of us even met Mr. Gogic before 2023, when he was already being detained pretrial at the Metropolitan Detention Center.

The Government has <u>NOT</u> alleged at any point that any additional charges will be brought in a superseding indictment in the case at bar. Instead, the Government argues that there may be litigation over an obstruction enhancement at a *Fatico* hearing if he is convicted, and speculates that there may be a separate case at an unspecified time in the future.

Neither the FBI's prior investigation of Mr. Corozzo for racketeering nor the alleged ongoing investigation for obstruction of justice is going to impair our zealous advocacy of Mr. Gogic in any way. The current investigation has absolutely *nothing* to do with violations of the MDLEA or conspiring to violate the MDLEA, making both reasons for disqualifying Mr.

17

Corozzo from **the trial** in *Napoli* (the risk of being a witness or an unsworn witness **at trial** and of being investigated concerning the charges at issue in **that trial**) entirely inapposite.

Knowing this, the Government does not argue that Mr. Corozzo or anyone else in the firm would be fact witnesses at Mr. Gogic's *trial*, and instead comes up with the novel legal theory that we should be disqualified from representing him at trial just in case we are later called as witnesses at a subsequent *Fatico* hearing or as yet non-existent separate prosecution. In the first place, the motion to disqualify is evidently premature, as it would not be ripe unless and until we were named as witnesses for a scheduled *Fatico* hearing or separate prosecution.

Second, the justification for the rule barring attorneys from assuming the simultaneous roles of advocates and fact witnesses, is firmly tied to protecting *jurors* from being improperly influenced at a *trial*, and has never been extended to protect *judges* from being improperly influenced at a *Fatico* hearing. "'Moreover his role as advocate may give his client an unfair advantage, because the attorney can subtly impart **to the jury** his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination,'" Gov.'s Motion to Disqualify, p. 7 (quoting *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993) (emphasis added).

Moreover, the Government's argument that we should be disqualified falls apart because we could not be witnesses (*de facto* or otherwise) even if we were not Mr. Gogic's attorneys. As stated *supra*, we **have no knowledge** concerning any obstruction of justice. We did not participate in any attempts to bribe a juror, nor, to our knowledge, did Mr. Gogic. We did not participate in any efforts to intimidate or influence Government witnesses and, as far as we know, neither did Mr. Gogic. Both CW-1 and CW-3 ███████████████████████. The reporter who wrote an article published about CW-3 had already learned independently of us that

18

CW-3 was going to testify and would have written the same article even if we refused to have any communication with him. The photograph allegedly showing CW-1 and his daughter would be useless to anyone trying to coerce CW-1 as the only person identifiable in the redacted photograph is Mr. Gogic himself, ████████████████████████████████ ████████████████████ That "individuals involved in narcotics trafficking attempted to contact" CW-1[15] hardly establishes that Mr. Gogic had anything to do with same. We recognize the severity of Mr. Gogic's charges and that it is one of the largest narcotics prosecutions the United States has ever had, but, last we checked, Mr. Gogic is not alleged to be conspiring with every narcotics trafficker in the world.  As for CW-2, we had no idea until reading the Government's filing that Mr. Gogic is alleged to have called him **two years ago**, but the Government trying to link an alleged violation of the Protective Order in 2025 to an incident that allegedly occurred over a year before simply defies logic and common sense. .

     In sum, the Government has not established the existence of any un-waivable conflict of interest, and, at a *Curcio* hearing, our client can put on the record that he knowingly and voluntarily waives any alleged conflict of interest.

II. Cross-Motion to Strike the Government's *Ex Parte* Submission.

     Generally, *ex parte* communications with a judge regarding the substance of a matter pending before the Court are prohibited. New York Rule of Professional Responsibility 3.5(a)(2); *Power Authority of New York v. Federal Energy Regulatory Com.,* 743 F.2d 93, 110 (2d Cir. 1984).

     The exception in Fed. R. Crim. Pro. 16 which permits the Government to make an *ex parte* application for a protective order does not extend to permitting the Government to

_____

[15] Motion to Disqualify p. 3.

communicate *ex parte* with the Court on why, in the Government's opinion, the Court should grant the Government's motion to disqualify defense counsel.

The reason that *ex parte* communications are generally prohibited is that "due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other," *United States v. Abuhambra*, 389 F.3d 309, (2d Cir. 2004) (citing *Joint Anti-Fascist Refugee Coom. v. McGrath,* 341 U.S. 123, 171, n. 17 [1951] [Frankfurter, J., concurring]). It is the duty of the judiciary to "'always [give] a fair opportunity to those who are parties in the controversy for correcting or contradicting any relevant statement prejudicial to their view,'" Id. (citation omitted). Cf. *Power Authority of New York*, 743 F.2d 93, 110 (in determining whether an *ex parte* communication warrants recusal, "one must look to the nature of the communications and particularly to whether they contain factual matter or other information outside of the record, which the parties did not have an opportunity to rebut") (citations omitted).

Mr. Gogic's Sixth Amendment right to counsel of his own choosing at his trial is at stake. The outcome of this trial will determine whether Mr. Gogic will be deprived of his liberty for decades to come, if not for the rest of his life. He has a right to rebut any allegations and arguments raised by the Government as to why the trial counsel that he chose should be disqualified from representing him at trial. He cannot rebut the statements in the Government's *ex parte* submission when he can only speculate as to what the Government's *ex parte* submission says about his counsel.

Wherefore, we respectfully request that the Court either Order disclosure of the Government's *ex parte* submission and afford Mr. Gogic an opportunity to thereafter respond to same, or else strike the Government's *ex parte* submission in its entirety.

20

**CONCLUSION**

Wherefore, as the Government has failed to satisfy their heavy burden of proving that Mr. Gogic should not be permitted to have the trial counsel that he chose, the Government's motion to disqualify defense counsel should be denied, except insofar as we consent to the Court scheduling a *Curcio* hearing at the Court's earliest convenience, and Defendant respectfully cross-moves for an Order either that the defense be given an opportunity to review and respond to the Government's *ex parte* submission or else striking the Government's *ex parte* submission in its entirety.

Dated: New York, New York
      January 23, 2026

Respectfully submitted,

*/s/ Angela D. Lipsman*
Angela D. Lipsman, Esq.
Joseph R. Corozzo, Esq.
Rubinstein & Corozzo, LLP
*Attorneys for*
*Defendant Goran Gogic*
260 Madison Ave., 22nd Fl.
New York, New York 10016
(212) 545-8777 (ph)
(917) 722-8206 (fax)
alipsman@rubcorlaw.com
jcorozzo@rubcorlaw.com

cc:    Assistant United States Attorneys Tanya Hajjar and Emily Dean