UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
UNITED STATES OF AMERICA,

        -against-

GORAN GOGIC,

                        Defendant.
-----------------------------------------------------------------------X

For Online Publication Only

**MEMORANDUM & ORDER**
22-CR-493 (JMA)

**FILED**
**CLERK**

4:46 pm, Apr 23, 2026

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

On January 9, 2026, the Government moved to disqualify defense counsel Joseph Corozzo, Jr. and his law firm, Rubenstein & Corozzo, LLP, from representing the defendant in this case, Goran Gogic.  (ECF No. 191 ("Mot."); ECF No. 193 (ex parte supplemental submission).)  For the following reasons, the Government's Motion to Disqualify is GRANTED.

## I.      BACKGROUND

On October 28, 2022, a grand jury in the Eastern District of New York returned an indictment charging Mr. Gogic with one count of conspiracy to violate the Maritime Drug Law Enforcement Act ("MDLEA") and three substantive counts of violating the MDLEA, in violation of 46 U.S.C. §§ 70503(a)(1), 70503(b), 70504(b)(2), 70506(a), 70506(b), and 21 U.S.C. § 960(b)(1)(B)(ii). (ECF No. 1.)  Mr. Gogic is alleged to have overseen a complex drug trafficking organization responsible for distributing over 19,000 kilograms of cocaine—worth over $1 billion—seized at U.S. ports between February and June of 2019.  (Id.; see also ECF No. 79 at 2.)  Magistrate Judge Clay Kaminsky selected a jury on November 3 and November 5, 2025.  Trial was scheduled to begin before the undersigned on November 17, 2025.

On the morning that trial was set to begin, the Government disclosed that one of the selected jurors had been offered a $50,000 to $100,000 cash bribe in exchange for his agreement to vote not guilty at Mr. Gogic's trial.  See United States v. Krasniqi et al., 25-CR-385 (E.D.N.Y.), ECF No. 21 (juror bribery indictment).  As a result, the Court granted the Government's

application to dismiss the venire and adjourn the trial. (See ECF No. 184.) Three individuals were arrested and charged in connection with the attempt to bribe the juror. See United States v. Krasniqi et al., No. 25-CR-385 (E.D.N.Y.), ECF No. 1 (Sealed Complaint); id., ECF No. 2 (Arrest Warrants). According to the Government, both Mr. Gogic—who is from Montenegro—and the individuals who were charged with juror bribery have ties to Albanian organized crime. Id., ECF No. 16, 9:5–9, 11:3–9 (Arraignment Tr.). Krasniqi and his co-conspirators allegedly "circulated a photograph of the juror" and "affirmatively sought out an individual who knew the Juror to approach the Juror and extend the bribe." Id., ECF No. 32 at 1 (Government's Opp'n to Bail). In a recorded conversation, a co-conspirator asked, "how did they find [the juror's] name?" and Krasniqi responded, "[p]eople there at jury duty[.]" Id. at 2. When law enforcement searched the homes of the Krasniqi defendants, they found a cell phone with a photograph of the juror and a piece of paper with the juror's first and last names, home address, and place of employment. Id. at 3.

Krasniqi pled guilty on March 9, 2026 to one count of obstruction of justice. Id., ECF No. 44; id., ECF No. 45. Another co-conspirator pled guilty on February 19, 2026 to one count of obstruction of justice. United States v. Fteja, No. 26-CR-23 (E.D.N.Y.), ECF No. 25; id., ECF No. 28. A change of plea hearing for the third co-conspirator is currently scheduled for May 5, 2026. United States v. Krasniqi, No. 25-CR-385 (E.D.N.Y.) (minute entry dated April 20, 2026).

Only a very limited number of individuals, including Judge Kaminsky, court staff, the prosecution team, defendant, and defense counsel were provided with the list of jurors' first and last names. Mr. Corozzo and his team are the sole witnesses, other than the defendant himself, who can attest to the disposition of the juror list copies provided to the defendant and the defense team.

The Government represents that its investigation into the juror bribery scheme is ongoing and that both Mr. Gogic and Mr. Corozzo are subjects of this investigation. (Mot. at 9; see also ECF No. 198 ("Dec. 17, 2025 Tr.").)

In connection with the juror bribery investigation, Bureau of Prisons staff searched Mr. Gogic's cell at the Metropolitan Detention Center ("MDC"). (See Mot. at 2; Dec. 17, 2025 Tr., 6:16–24.) That search revealed that Mr. Gogic had in his possession various discovery materials marked sensitive, which are subject to a 2023 protective order issued by Judge Ross and signed by Mr. Corozzo that prohibits Mr. Gogic from possessing such materials or reviewing them outside the presence of his counsel. (See Mot. at 2–4; Dec. 17, 2025 Tr., 5:3–24; ECF No. 28 (Protective Order) ¶¶ 10–12.) Those materials include a redacted photograph of a cooperating witness ("CW-1") and his daughter as well as 3500 material containing notes from another cooperating witness's ("CW-2") 2022 proffer sessions with the Government. (Mot. at 3.) Both of these cooperating witnesses have reported to the Government that they or their family have been contacted by Mr. Gogic himself or individuals associated with Mr. Gogic or narcotics trafficking. (Id.) According to the Government, just one week before trial, "an individual associated with an Eastern European drug trafficking organization" approached CW-1's former home in Colombia and interrogated his daughter about CW-1's whereabouts. (Id.) In January 2024, Mr. Gogic himself contacted CW-2 while both men were incarcerated at the MDC and asked CW-2 questions about the case and tried to get him to visit him on his floor of the jail. (Id.)

The Government argues that the discovery of these prohibited discovery materials in Mr. Gogic's cell is evidence of a "coordinated effort to intimidate witnesses and obstruct justice in this case." (Id.)

3

## II.    DISCUSSION

The Government argues that the Rubinstein & Corozzo attorneys should be disqualified for two reasons: (1) because Mr. Corozzo himself is a subject of the Government's ongoing juror bribery investigation, creating an unwaivable conflict of interest for himself and his firm, and (2) because the Rubinstein & Corozzo attorneys are potential witnesses in any future proceeding dealing with Mr. Gogic's participation or non-participation in juror bribery, witness retaliation, or obstruction of justice.  (Mot. at 8–9.)  As explained <u>infra</u>, the Court finds that the Rubinstein & Corozzo attorneys have severe conflicts of interest, both actual and potential, that require their disqualification from this case.

### A.  <u>Sixth Amendment Right to Counsel</u>

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. Amend. VI.

Under certain circumstances, a tension emerges between two aspects of the Sixth Amendment right to counsel.  On one hand, the right includes a presumption in favor of representation by a defendant's counsel of choice.  See <u>United States v. Jones</u>, 381 F.3d 114, 119 (2d Cir. 2004).  On the other hand, the right "entails 'a correlative right to representation that is free from conflicts of interest.'"  <u>United States v. Levy</u>, 25 F.3d 146, 152 (2d Cir. 1994) (quoting <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981)).  Generally, when a defendant's right to conflict-free counsel clashes with his right to counsel of his own choosing, "the decision as to which is to take precedence should be left to the defendant."  <u>United States v. Curcio</u>, 680 F.2d 881, 885 (2d Cir. 1982).  However, some conflicts of interest are so severe that they are considered <u>per se</u> unwaivable.  For instance, "[w]here a government witness implicates defense counsel in a related crime, . . .  we must assume that counsel's fear of, and desire to avoid, criminal charges, or even the reputational damage from an unfounded but ostensibly plausible accusation, will affect

4

virtually every aspect of his or her representation of the defendant." United States v. Fulton, 5 F.3d 605, 613 (2d Cir. 1993) (disqualifying defense counsel who was implicated in crimes that were closely related to those charged against his client); see also United States v. Arrington, 867 F.2d 122, 129 (2d Cir. 1989) (affirming mid-trial disqualification of an attorney where a government witness was likely to testify that the attorney was involved in a plot to silence witnesses in the trial).

Even where a conflict is conceivably waivable, the district court must reject a waiver and disqualify the conflicted attorney if the court determines that an actual or potential conflict of interest exists that is so severe "that no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). This is because "trial courts have an 'independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment.'" Id. (quoting Wheat v. United States, 486 U.S. 153, 161 (1988)). For example, courts often reject conflict waivers where co-defendants seek to proceed with joint representation, if the court finds that the shared counsel's divided loyalty could "prevent an attorney from . . . arguing at the sentencing hearing the relative involvement and culpability of his clients in order to minimize the culpability of one by emphasizing that of another." Wheat, 486 U.S. at 160 (quoting Holloway v. Arkansas, 435 U.S. 475, 490 (1978)). As another example, district courts will disqualify an attorney if there is a risk that an attorney's personal involvement in his client's conduct could lead the attorney to become a sworn or unsworn witness at trial. See, e.g., Arrington, 867 F.2d at 129; Jones, 381 F.3d at 121 (affirming disqualification of attorney who might become a witness at trial). "An attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial." United States v. Locascio, 6 F.3d 924, 933 (2d Cir. 1993). This is grounds for disqualification in part because the attorney's "role as advocate may give his client

an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." Id.

Evaluating whether to allow a criminal defendant to waive a conflict is a difficult task, for, as the Supreme Court acknowledged:

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

Wheat, 486 U.S. at 163; see also Jones, 381 F.3d at 120 ("Conflicts of interest are notoriously hard to predict at this early stage of the criminal proceeding[.]")  For this reason, district courts have "substantial latitude" to disqualify counsel where "the potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163.  Of course, where the potential conflict is based only on unproven allegations of misconduct by the attorney, "the foregoing considerations do not apply if the allegations are clearly false." Fulton, 5 F.3d at 613.

Additionally, district courts "retain discretion to reject a defendant's knowing and intelligent waiver when his attorney's conflict jeopardizes the integrity of judicial proceedings." United States v. Perez, 325 F.3d 115, 125 (2d Cir. 2003); see also United States v. Rivera, 571 F. App'x 55, 60 (2d Cir. 2014) ("Courts must also consider the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial.") (internal citation omitted).  "When a lawyer's conflict, actual or potential, may result in inadequate representation of a defendant or jeopardize the federal court's institutional interest in the rendition of a just verdict, a trial judge has discretion to disqualify an attorney or decline a proffer of waiver." Fulton, 5 F.3d at 612; see also United States v. Elder, 311 F. Supp. 3d 589, 595 (E.D.N.Y. 2018) ("Federal courts' independent interest in ensuring that criminal trials are

6

ethical and fair, coupled with the potential for gamesmanship on the part of the defendant who waives a conflict only to later claim ineffective assistance, necessitates affording the district courts broad latitude in refusing conflict waivers.") (cleaned up).

## B.  The Conflicts of Interest in This Case

The Government has identified several actual and potential conflicts that, taken together, overcome the presumption in favor of representation by a defendant's counsel of choice.

First, the Court finds that Mr. Corozzo has an actual conflict of interest because he and Mr. Gogic are both subjects of the Government's investigation into an attempt to bribe a juror in this very case.  If the Court were to allow Mr. Gogic to waive this conflict, Mr. Gogic would be "represented by counsel encumbered with a strong incentive to conduct the trial in a manner that would minimize counsel's own exposure."  Arrington, 867 F.2d at 129.  Although Mr. Corozzo maintains that "there is no love lost . . . [and] none to be cultivated" between himself and the Government, (ECF No. 195 ("Opp.") at 5), the Court concludes that the conflict between his interests and Mr. Gogic's is so severe "that no rational defendant would knowingly and intelligently desire" such representation.  Levy, 25 F.3d at 153; cf. United States v. Cain, 671 F.3d 271, 292–93 (2d Cir. 2012) (affirming district court's disqualification of an attorney who was called to testify against his client in a separate grand jury investigation into witness tampering because the attorney's "ability to represent his client effectively would be compromised if he were simultaneously serving as a witness against him, even in a separate proceeding").

The Court is not persuaded by Mr. Corozzo's argument that the disqualification motion is premature because the government proposes to bring up the juror bribery scheme at a Fatico hearing or future proceeding, rather than at Mr. Gogic's trial.[1]  (See ECF No. 195 at 4.)  Although

---

[1]    The Government has not indicated that it presently intends to introduce evidence of the juror bribery scheme at Mr. Gogic's upcoming trial.  However, there is still a possibility, depending on developments in its ongoing investigation or for other reasons, that the Government might ultimately seek to introduce such evidence at trial. See Wheat, 486 U.S. at 162 ("The likelihood and dimensions of nascent conflicts of interest are notoriously hard to

7

neither Mr. Gogic nor Mr. Corozzo is presently charged in connection with the juror bribery scheme, the alleged scheme is clearly related to the instant case. The juror targeted by the bribery scheme was empaneled on this case, and it was his vote in this case that the Krasniqi defendants sought to purchase. Even if the juror bribery investigation results in no further charges, the allegations against Mr. Corozzo are "sufficiently related" to the case at bar so as "to create a real possibility that [his] vigorous defense of his client will be compromised." Fulton, 5 F.3d at 611, 613. Mr. Gogic should be represented at trial by an attorney who is not preoccupied by a related investigation into his own potential misconduct. Moreover, if Mr. Corozzo were to be subsequently charged in connection with the juror bribery scheme, the resulting conflict would be so severe as to utterly taint the integrity of the proceedings in this case. See United States v. Bourne, 723 F. App'x 12, 13 (2d Cir. 2017) ("The district court exercises this discretion to protect both the defendant's right to effective assistance of counsel and the state's interest in the integrity of legal proceedings."). Accordingly, the Court will not permit Mr. Gogic to waive this conflict.

Second, the Court finds that Mr. Gogic's possession of sensitive discovery materials in violation of the 2023 protective order creates a very serious potential conflict of interest between Mr. Gogic and the Rubinstein & Corozzo attorneys. Some of these materials identify cooperating witnesses as to whom there is already other evidence of attempted witness intimidation. Mr. Gogic's defense counsel had an obligation to ensure their own compliance, as well as Mr. Gogic's, with the Court's protective order. In his opposition to the instant motion, Mr. Corozzo essentially admits that Mr. Gogic obtained the prohibited materials from his defense counsel, writing: "we acknowledge that the materials were not kept in our sight at all times . . . . Accordingly, we would

---

predict[.]"). If evidence of jury tampering does get introduced at trial while Mr. Gogic and Mr. Corozzo both remain subjects of that investigation, the conflict between Mr. Corozzo's duty to vigorously defend his client and his interest in avoiding criminal liability would become even more severe than it is already. Mr. Corozzo could also end up serving as a sworn or unsworn witness.

8

not have known if a couple of documents brought to the MDC ended up inadvertently mixed in with whatever papers that Mr. Gogic was allowed to have[.]" (Opp. at 9.)  Here, Mr. Corozzo asks the Court to trust his word that Mr. Gogic obtained these documents by accident, rather than as part of a plot to obstruct justice.  (See ECF No. 195 at 9.)

Mr. Corozzo's argument only emphasizes the possibility that he could become a sworn witness (for or against his client) or unsworn witness at trial.  The Government represents that, at trial, it "may seek to admit [Mr. Gogic's] handwritten statements on CW-2's proffer material," which Mr. Gogic possessed in his cell in violation of the protective order.  (ECF No. 197 at 3.) Mr. Corozzo's entreaty that the Court to accept his version of the events that led to Mr. Gogic's possession of these prohibited materials foreshadows the risk that, at trial, he might "subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination." Locascio, 6 F.3d at 933; see also Jones, 381 F.3d at 121 (district court did not abuse its discretion in disqualifying counsel who might become a witness at trial even though "neither the court nor the parties were assured of the path the trial would take when this decision was made"); Arrington, 867 F.2d at 128 (disqualifying counsel who might be implicated in a witness intimidation plot by a trial witness).

Additionally, should the Government seek to introduce at trial evidence of the discovery materials found in Mr. Gogic's cell, defense counsel may be forced to choose between arguing that Mr. Gogic's possession of the prohibited materials was innocent and defending the propriety of defense counsel's own conduct in this case. See, e.g., United States v. Schlesinger, 335 F. Supp. 2d 379, 384 (E.D.N.Y. 2004) (considering a conflict between the attorney's duty to defend his client and incentive to protect his own firm's reputation).  Although these potential conflicts "may or may not burgeon into an actual conflict as the trial progresses," Wheat, 486 U.S. at 163, the risk is serious and provides additional support for the Court's decision to disqualify Mr. Corozzo and

his associates.[2]  Moreover, the Court cannot, as Mr. Gogic and Mr. Corozzo suggest, treat the juror bribery scheme, the attempted intimidation of witnesses, and the violations of the protective order as completely unrelated events.  The prospect of multiple actual or potential conflicts further weighs in favor of disqualification.

Finally, this Court has "an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them."  Wheat, 486 U.S. at 160.  The Court is wary of the need "to guard against the tactical use of disqualification motions."  United States v. Schulte, No. 17-CR-548, 2020 WL 534508, at *1 (S.D.N.Y. Feb. 3, 2020).  However, this is not a case where the Government "'manufacture[d]' a conflict in order to prevent a defendant from having a particularly able defense counsel at his side[.]"  Wheat, 486 U.S. at 163.  The allegations involving jury tampering, obstruction of justice, and Mr. Corozzo's potential involvement are not "clearly false," Fulton, 5

---

[2]  The Court notes that Mr. Corozzo's violations of the protective order here are extremely serious and might, on their own, potentially justify disqualifying him from further representing Mr. Gogic in this case.  Given the attempted juror bribery and other evidence in this case concerning alleged attempts to obstruct justice, counsel's adherence to protective orders is particularly crucial in this case.  Disclosure of sensitive materials subject to the protective order at issue were made in advance of the original trial date and defense counsel remains in possession of those materials.

Additionally, there is the prospect that additional sensitive information will be disclosed to the defense under the same protective order or other protective orders issued by the Court.  First, in advance of the new trial date, the Government will likely have to disclose additional 3500 material that will be subject to the same protective order that has already been violated.  Second, given the prior attempt to bribe a juror in this case, it may be appropriate to empanel a semi-sequestered and/or anonymous jury.  When an anonymous jury is used, courts must take steps to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected, and it may be appropriate to permit certain information about the potential jurors to be disclosed to defense counsel on an "attorneys-eyes-only" basis pursuant to a protective order.  See United States v. Kandic, No. 17-CR-449, 2021 WL 5505832, at *5 n.4 (E.D.N.Y. Nov. 24, 2021).  Third, it may be necessary before and during trial for the Court or the Government to disclose other sensitive information to defense counsel on an "attorneys-eyes-only" basis.

The troubling failures of Mr. Corozzo and his team to abide by the protective order cast grave doubt on whether protective orders issued by the Court are sufficient to safeguard any sensitive information in this case while they remain counsel to Mr. Gogic.  If this Court were to find that Mr. Corozzo's violations of the protective order were intentional, the Court does not see how it could permit Mr. Corozzo to continue to represent Mr. Gogic in this action.  Even if Mr. Corozzo's actions were, as he claims, merely negligent, the Court has difficulty seeing how Mr. Corozzo can be permitted to continue representing Mr. Gogic in this case, particularly in light of the attempted jury tampering that has already occurred and the allegations of attempts to intimidate witnesses.

It is ultimately unnecessary for the Court to determine whether Mr. Corozzo's violations of the protective order are sufficient, standing alone, to disqualify him from this case because, for reasons already discussed, the Court finds that Mr. Gogic may not waive the conflicts at issue.

10

F.3d at 613, and it is plausible that the Government will seek to introduce aspects of the events discussed herein at trial, at sentencing, or in a related future legal proceeding.[3]

For all these reasons, the Court concludes that the Rubinstein & Corozzo, LLP attorneys must be disqualified because there is an intolerably high likelihood that their continued representation of Mr. Gogic could amount to ineffective assistance of counsel.[4] See Jones, 381 F.3d at 121 ("We could not expect the district court to rule otherwise where it seems more likely than not that a number of conflicts will materialize.").

### III.    CONCLUSION

For the reasons stated above, the Court GRANTS the Government's motion to disqualify attorneys Joseph Corozzo, Jr., Angela Lipsman, and Ian Healy from continuing as defense counsel in this matter.  This ruling does not affect attorneys George Vila, Noam Greenspan, or Sanford Talkin, who also represent Mr. Gogic.

**SO ORDERED.**

Dated:    April 23, 2026
          Brooklyn, New York

                                        /s/ JMA
                                      JOAN M. AZRACK
                                      UNITED STATES DISTRICT JUDGE

---

[3]    Defendant's assertion that this disqualification motion was a tactical maneuver by the Government after the Court denied the Government's motion concerning the Sky ECC evidence is absurd.  (See ECF No. 196 at 5.)  After the Government's motion was denied, the Government was ready to proceed to trial. The Government only brought the instant disqualification motion after the attempted juror tampering came to light and after Mr. Gogic's cell was searched as part of the investigation into the bribery scheme.

[4]    The Government has provided the Court with an ex parte submission in connection with this motion.  (ECF No. 193.)  Mr. Gogic objects to this ex parte filing and contends that the Court either should not consider this submission or should disclose this submission to him.  (See ECF No. 196.) The Court overrules Mr. Gogic's objection. Even if the Court were to exclude this submission, the Court would still reach the same conclusion that defense counsel must be disqualified.  Because the Court would not permit Mr. Gogic to waive the conflicts discussed herein, this is not a situation where Mr. Gogic needs to know the contents of the ex parte submission to decide whether to waive the conflict.  Accordingly, the Court's consideration of the ex parte submission does not violate Mr. Gogic's due process rights.

Having considered the ex parte submission, the Court finds that this submission further supports its decision to disqualify Mr. Corozzo. ████████████████ (See ECF 193.)

11